IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARQUITA M., | ) |
|     Plaintiff, | ) No. 20 C 2517 |
| v. | ) Magistrate Judge M. David Weisman |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Marquita M. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

### Background

On October 24, 2016, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 15-39, 144-45, 196-97.) The Appeals Council declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous,

it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Acting Commissioner must consider whether the claimant: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Acting Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 22, 2016. (R. 17.) At step two, the ALJ determined that plaintiff has the severe impairments of: "affective disorder (variously diagnosed as bipolar disorder or major depressive disorder); anxiety disorder; personality disorder; obesity; degenerative disc disease of the lumbar spine; carpal tunnel syndrome, status post repair on the right; mild degenerative joint disease in the left knee, left foot, and shoulders; [and] history of torn

rotator cuffs bilaterally." (R. 18.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*) At step four, the ALJ found that plaintiff is unable to perform her past relevant work but has the RFC to perform sedentary work with certain exceptions. (R. 20-37.) At step five, the ALJ found that the jobs exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 37-38.)

Plaintiff argues that the ALJ should have had a medical expert testify at the hearing because the agency reviewers' opinions about plaintiff's physical RFC were rendered before substantial medical evidence, including a carpal tunnel syndrome ("CTS") diagnosis, was submitted. (ECF 22 at 1-3.) First, the record shows that plaintiff's CTS was diagnosed before the agency doctors performed their review. (R. 162, 187.) Second, the ALJ specifically addressed the post-agency review evidence plaintiff cites. (*See* ECF 32 at 5; R. 27-32.) Third, the conclusions of the pre- and post-agency EMG studies yielded the same conclusion: plaintiff has mild CTS. (R. 712-15, 1750.) Finally, plaintiff does not explain how any of the post-agency review evidence calls for greater limitations than those in the ALJ's RFC. *Compare Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (error not to incorporate hand-use limitation in RFC when medical evidence supported a greater limitation than RFC contemplated). Thus, the ALJ's failure to call a medical expert to testify was not error.

Plaintiff also contends that the RFC is faulty because it is not based on any doctor's opinion. Though "the ALJ did not adopt any particular doctor's RFC opinion, . . . [s]he was not required to do so" as "the RFC determination is the responsibility of the ALJ." *Hannah-Walker v. Colvin*, No. 2:12-CV-61-PRC, 2013 WL 5320664, at *10 (N.D. Ind. Sept. 23, 2013) (citing 20 C.F.R. § 404.1546(c)). Moreover, the fact that the ALJ did not adopt any medical opinion in full

3

does not mean that the RFC is unsupported. On the contrary, the ALJ explained at length how the medical evidence supported the RFC. (*See* R. 22-37.)

Next, plaintiff argues that the physical RFC is flawed because: (1) there is no evidence supporting the finding that plaintiff can lift/carry 10 pounds frequently, can sit 6 out of 8 hours, handle/ finger frequently, or the 20/1 minute sit/stand option; (2) the ALJ did not sufficiently discuss the impact of plaintiff's obesity; and (3) it does not include plaintiff's need to lie down.

First, the lift/carry and sitting limitations are based on the agency doctors' opinions (*see* R. 113, 136, 162, 187), on which the ALJ was entitled to rely. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Second, though the agency doctors opined that plaintiff had no limitations on handling/fingering (R. 114, 137, 163, 188), the ALJ explained that she limited those maneuvers to frequent because of plaintiff's mild CTS. (R. 31.) Third, the ALJ incorporated a 20/1 minute sit/stand option, despite plaintiff's allegation that she could only sit for 10 minutes, because the medical evidence, plaintiff's function report, and plaintiff's behavior at the hearing did not support her allegation. (R. 32; *see* R. 73, 344, 854, 1177); *see also Kaplarevic v. Saul*, 3 F.4th 940, 942-43 (7th Cir. 2021) ("It is a routine, common-sense practice for an ALJ to observe claimants. We see no reason to criticize the ALJ for his partial reliance on his own observations in his determination of disability."). Fourth, the ALJ's discussion of plaintiff's obesity is not "perfunctory and insufficient," as plaintiff claims. (ECF 22 at 7.) The ALJ repeatedly acknowledged plaintiff's obesity and expressly considered it in limiting plaintiff to sedentary work. (*See* R. 24-27, 29-30, 32.) Further, plaintiff does not explain how obesity exacerbates any impairment, let alone identify record support for such a claim. (ECF 22 at 7); *see Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013) (stating that "an ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her

4

ability to work"). Finally, plaintiff contends that the RFC improperly failed to address plaintiff's need to lie down because of back pain. (ECF 22 at 7.) But the record shows, and the ALJ found, that plaintiff's subjective allegations of disabling back pain were unsupported.[1] (*See* R. 786-87 (medical record dated 12/20/16 stating that plaintiff complained of pain "'all over her body,'" but her musculoskeletal exam was normal, she did not have antalgic gait, "[did] not appear to be in severe pain," and her range of motion was "intact," though she "ha[d] hyperreaction to pain"); R. 789-90 (medical record dated 1/9/17 stating that plaintiff complained of pain "'all over'" but her musculoskeletal exam was normal except that she had hyperesthesia[2] at multiple joints); R. 809 (3/23/17 medical record stating that plaintiff refused to sit down in exam room because of back pain but when she went back to the waiting area she "sat and stood up without any problems or signs of dsycomfort [sic]"); R. 1109-10 (12/21/17 medical record stating that plaintiff complained of back pain 10/10 but the doctor was "unable to identify any structural pathology which [could be] definitively associated with her clinical presentation"); R. 1137 (medical record dated 1/9/18 stating that plaintiff complained of chronic back pain but there was "no clear evidence of spinal compression on imaging"); R. 1727 (7/17/18 medical record stating that plaintiff has chronic lower back pain "in the setting of fear avoidance behaviors and pain catastrophizing"); R. 1738, 1792, 1816 (medical records dated 7/26/18, 8/3/18, and 8/15/18 stating that plaintiff "continues to exhibit significant pain catastrophization, passive coping strategies, and fear-avoidance behaviors"); R. 1825 (8/21/18 medical record stating that plaintiff's EMG study was "mildly abnormal," and it showed mild lower left lumbar radiculopathy and no evidence of right lumbar radiculopathy); R. 1941, 1946, 1962, 1991, 2018, 2037, 2044 (medical records dated 3/19/18, 4/23/18, 5/22/18,

---

[1] For the same reasons, plaintiff's challenge to the ALJ's subjective symptom evaluation fails.
[2] "Hyperesthesia is an increase in the sensitivity of any of your senses, such as sight, sound, touch, and smell." https//www.healthline.com/health/hyperesthesia (last visited Aug. 20, 2021).

5

6/25/18, 7/23/18, 9/4/18, and 2/27/18 stating that plaintiff had normal muscle strength and tone, normal range of motion, and normal gait and station).) In short, plaintiff's challenges to the physical RFC fail.

Plaintiff also contends that the mental RFC is unsupported. The ALJ gave "great weight" to the agency reviewers' mental RFC, except for their limitation of plaintiff to one-to-two-step tasks because: "[Plaintiff's] ability to independently negotiate her numerous medical appointments and medical care clearly confirms that she can perform many step tasks." (R. 37.) Even if this conclusion were erroneous, that error would be harmless. If plaintiff were limited to one-to-two-step tasks, she could still work as a final assembler. (*See* R. 38); *see also* Dictionary of Occupational Titles, *available at* https://occupational info.org/71/713687018.html (last visited Aug. 20, 2021). The VE testified that final assembler accounted for 50,000 jobs nationally (R. 91), which is well over the threshold for a significant number of jobs. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("[I]t appears to be well-established that 1,000 jobs is a significant number."). Accordingly, even if the ALJ should have adopted the one-to-two-step limitation, plaintiff would still not be disabled.

Next, plaintiff contests the ALJ's evaluation of the opinion of consulting expert ("CE") Kenneth Levitan. The ALJ gave "considerable weight" to Dr. Levitan's opinion, except for his conclusion that plaintiff "may have difficulty retaining [instructions] for more than a number of working days" because that finding conflicted with the findings of plaintiff's treating psychiatrist, Dr. Abbasi. (R. 33; *see e.g.*, R. 1930, 1941, 1946, 1991, 2018, 2037 (Dr. Abbasi's records dated 2/27/18, 3/19/18, 4/23/18, 6/25/18, 7/23/18, 9/4/18 stating that plaintiff's "[r]ecent and remote memory" were "[i]ntact").) Plaintiff argues that this was error because "Dr. Abbasi did not formally test [plaintiff's] memory," and Dr. Levitan did. (ECF 22 at 8; *see* R. 733-34.) In fact,

both doctors performed mental status evaluations, not standardized memory tests, and the ALJ was entitled to give more credit to the findings of a treater who examined plaintiff multiple times than to those of a CE, who examined plaintiff once. *See* 20 C.F.R. § 404.1527(c) (setting forth factors an ALJ must consider when assessing medical opinions); *see also Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (a treating physician's opinion "should receive controlling weight if it is well supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record"). Thus, the ALJ's evaluation of Dr. Levitan's opinion was not erroneous.

Plaintiff also contends that the ALJ erred in assessing the 4/27/17 opinions of plaintiff's treating physician Ilina Andreeva. (R. 35.) Dr. Andreeva said that plaintiff: (1) suffered from low back and shoulder pain; (2) pain would "constantly" interfere with her ability to concentrate; (3) she could sit or stand for thirty minutes at a time but less than two hours total in an eight-hour workday; (4) she cannot lift/carry, reach and grasp at all, and can rarely perform fine manipulations; and (5) she would likely be absent from work more than four days a month. (R. 854-56.)

The ALJ gave these opinions "minimal weight" because: (1) Dr. Andreeva is not a specialist; (2) her treatment notes for the same day said that plaintiff would benefit from "'active physical therapy" and her musculoskeletal exam was "normal" except for limited range of motion in her shoulders and "hypersensitive[ity] to touch" in the lumbar region; (3) the notes do not say plaintiff was limited in her ability to sit, stand, or lift; and (4) the notes indicate that the doctor prescribed a cane only because plaintiff "[was] convinced [it would] help her." (R. 35 (citing R. 819-20).) The ALJ also noted that orthopedic specialists said, variously, that plaintiff was "somewhat dramatic in attitude so I cannot tell for sure what objective findings I am looking at;" "I do not have a clear diagnosis for her;" and "I am unable to identify any structural pathology

which I can definitively associate[] with her clinical presentation." (R. 23-24, 27 (citing R. 618, 796, 1110).)

Plaintiff faults the ALJ for failing to address each factor in the governing regulation in her evaluation of Dr. Andreeva's opinions. With respect to this issue, the Seventh Circuit has said:

> [W]hile the ALJ did not explicitly weigh each factor in discussing Dr. Belford's opinion, his decision makes clear that he was aware of and considered many of the factors, including Dr. Belford's treatment relationship with Schreiber, the consistency of her opinion with the record as a whole, and the supportability of her opinion. . . . While we may not agree with the weight the ALJ ultimately gave Dr. Belford's opinions, our inquiry is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527, *see Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527), and built an "accurate and logical bridge" between the evidence and his conclusion. We find that deferential standard met here.

*Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). As in *Schreiber*, the ALJ's opinion here "sufficiently accounted" for the regulatory factors. Thus, the ALJ did not err in assessing of Dr. Andreeva's opinions.

## Conclusion

For the reasons set forth above, the Court affirms the Acting Commissioner's decision, grants the Acting Commissioner's motion for summary judgment [31], and terminates this case.

**SO ORDERED.**             **ENTERED:** August 24, 2021

**M. David Weisman**
**United States Magistrate Judge**